## Missouri & Illinois Coal Co. v. John Schwalb et al.

1. MINES AND MINING—*Liability for Failure to Examine Mines.*— Before a recovery under Sec. 4 of Chap. 93, R. S., entitled "Miners," providing for the inspection of coal mines, can be had, it devolves upon the person seeking such recovery to show that the violation of the act has been willful, and that the injury complained of is the result of such failure.

2. SAME—*Actions Under Section 14 of the Miners' Act—Penalties.*— The action under Secs. 4 and 14 of Chap. 93, R. S., entitled "Miners," is not to recover a penalty, but it is to recover damages caused by the violation of the law.

3. SAME—*Basis of the Right of Recovery for Failure to Examine a Mine.*—The right of recovery for the failure to make examinations of mines is based upon a willful failure or a willful violation of the statute requiring such examinations.

**Trespass on the Case.**—Failure to make an examination of a mine. Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the August term, 1897. Reversed and remanded. Opinion filed March 10, 1898.

WISE & McNULTY, attorneys for appellant, contended that the right to recover is given by the statute only when the failure to comply with the law is willful or intentional. Consolidated Coal Co. v. Carson, 66 Ill. App. 434; Hawley v. Dailey, 13 Ill. App. 391; Beard v. Skeldon, 13 Ill. App. 54; Catlett v. Young, 143 Ill. 81; Springside C. M. Co. v. Grogan, 53 Ill. App. 60; Ch. 93, Sec. 14, p. 2728, Starr & C. Ann. Stat. (2d Ed.)

"Willful" means intentional, as distinguished from accidental or involuntary.

"Referring to an act forbidden by law, means that the act must be done knowingly and intentionally; that with knowledge the will consented to, designed and directed the act." Anderson Law Dict. "Willful," citing Woodhouse v. Rio Grande Ry. Co., 67 Tex. 416; Highway Com. v. Ely, 54 Mich. 180.

"To say that an injury resulted from the negligent and willful conduct of another is to affirm that the same act is

the result of two exactly opposite mental conditions. It is to affirm in one breath that an act was done through inattention, thoughtlessly, heedlessly, and at the same time purposely and by design." Louisville, N. A. &. C. Ry. Co. v. Bryan, 107 Ind. 51; Beacham on Contrib. Neg., 67, 68; Palmer v. Chicago, St. L. & P. R. R. Co., 112 Ind. 250; Springside C. M. Co. v. Grogan, 53 Ill. App. 60.

As this was a suit upon the statute, evidence which sought to show the examination of the mine was negligently made, was not admissible, and the court erred in admitting such evidence. Hawley v. Dailey, 13 Ill. App. 391; Beard v. Skeldon, 13 Ill. App. 54.

It was not the duty of the appellant to, examine, by sounding, the roof of each room. The law imposes the duty of timbering, or taking care of the roof, upon the miner or loader. The evidence shows it was the loader's duty, in this mine, to timber. Hence the law, being consistent, can not impose the same duty upon two different parties. Consolidated Coal Co. v. Scheller, 42 Ill. App. 619; Same v. Yung, 24 Ill. App. 255; Same v. Carson, 66 Ill. App. 434; see also as to statutory construction, In re Swigert, 119 Ill. 88; Shirk v. People, 121 Ill. 61; Brush v. Lemma, 77 Ill. 496; Montgomery v. Wyman, 130 Ill. 17; Misch v. Russell, 136 Ill. 22; Ambler v. Whipple, 139 Ill. 311; Sutherland Stat. Const. Secs. 267, 268, 269.

The failure to inspect before the men went to work did not principally or substantially, or in any way, cause the injury. And unless the injury was principally and substantially caused by a willful failure to comply with the law, the plaintiffs could not recover. Coal Run Coal Co. v. Jones, 127 Ill. 379; Illinois Fuel Co. v. Parsons, 38 Ill. App. 182.

WEBB & WEBB, attorneys for appellees.

A "willful violation" of the law means a violation knowingly and deliberately committed. In other words, when the law is willfully violated, it is violated intentionally. Catlett v. Young, 143 Ill. 74.

Where an action is based on the statute for a willful failure to comply with its requirements, such action is given without reference to the care and prudence of the person injured, and evidence of contributory negligence is incompetent and not admissible.   Beard v. Skeldon, 13 Ill. App. 54; Catlett v. Young, 38 Ill. App. 198; Niantic Coal Co. v. Leonard, 126 Ill. 216.

OPINION PER CURIAM.

Adolph Schwalb was killed in the mine of appellant on the 11th of April, 1896, about half past eleven in the forenoon, by the falling of a "pot" or "clod" of dirt from twelve to fifteen feet in diameter, thin at the edges and eight inches thick in the middle, from the roof of the room in which he had been working.   At about eleven o'clock of the forenoon of the above date he was called to the foot of the shaft, where for some reason he was discharged.   He returned to the room for his tools, and while getting them the "pot" or "clod" fell, causing his death.   This action is brought by the father, mother and four brothers of the deceased.   It was tried upon the second amended declaration, to which the general issue was pleaded.   The part of the declaration material to be considered in this case is in substance as follows :

Plaintiffs aver that it was the duty of defendant to have had its said mine examined every morning by a duly authorized agent, to determine whether there were any dangerous accumulations of gas, or lack of proper ventilation or obstructions to roadways, or any clod, dirt, rock or any other overhanging material likely to become detached from the roof of said mine and fall upon and injure defendant's employes, or any other dangerous conditions, and to allow no person to enter the mine until such agent shall report all conditions safe for beginning work, and to have required such examiner or agent to make a record of such daily examinations in a book kept for that purpose, such book to be kept where it could be inspected by the men employed in and about the mine.

Plaintiffs further aver that defendant, contrary to the statute, willfully, wrongfully and negligently failed and omitted to have its said mine examined as aforesaid, and willfully, wrongfully and negligently allowed and permitted its employes to enter said mine without first having had said mine examined as aforesaid, and failed to give notice of such examination in a book to be kept for that purpose as aforesaid.

Plaintiffs further aver, that on the 11th day of April, one Adolph Schwalb was in the employ of defendant, and was engaged in and about his duties in said mine, and while so engaged, a large quantity of rock, dirt and clod became detached and loose from the roof of said mine and fell upon him, and so crushed his body that he immediately died. By means of which said willful, wrongful and negligent failure and omission of defendant to have his mine examined as aforesaid, and allowing its employes to enter said mine without first having the mine examined as aforesaid, and the failure to keep a record of such examination in a book, to be prepared and kept for that purpose, the said Adolph Schwalb lost his life.

The second count of the declaration as to the duty of appellant to make an examination and to keep a record in a book, etc., and that it was not made, and that in consequence thereof deceased came to his death, is the same in substance as the first count.

The declaration is based upon that part of Section 4 of Chapter 93, Starr & Curtis' Stat., which is as follows:

" All mines in which men are employed, shall be examined every morning by a duly authorized agent of the proprietor, to determine whether there are any dangerous accumulations of gas, or lack of proper ventilation, or obstruction to roadways, or any other dangerous conditions, and no person shall be allowed to enter the mine until such examiner shall have reported all the conditions safe for beginning work. Such examiner shall make a daily record of the condition of the mine in a book kept for that purpose, which shall be accessible at all times for examination by the men employed in and about the mine and by the inspector."

Section 14 of said act provides :

" For any injury to person or property occasioned by any willful violations of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby; and in case of loss of life by such willful violation or willful failure as aforesaid, a right of action shall accrue," etc.

No examination of the mine was made in the morning before the miners entered, and no record made of its condition.   The important question then to be answered is, did Adolph Schwalb lose his life through a willful failure to make an examination in the morning as required by the statute ?   If he did appellant is liable under the declaration. If he did not lose his life through such failure, appellant is not liable.   This leads to the consideration of two propositions :

First, if an examination made in the morning before the miners entered, would not have disclosed the dangerous condition of the room, then Adolph Schwalb did not lose his life through a failure to make such examination.

Second, if an examination of the character intended by the statute, was made at half past eight in the morning, two hours before Schwalb was killed, and did not disclose the " clod " or " pot " which fell and killed him, then appellant is not liable under this declaration; for it is evident that if the danger of a falling " clod " or " pot " was not apparent at half past eight, it would not have been apparent at an earlier hour.   This action is not brought to recover a penalty for violating a law, but is brought to recover damages alleged to have been caused by a violation of the law.   The time of the examination, then, so far as this case is concerned, is immaterial, if made before the accident occurred.

Was there an examination by the agent of appellant before the accident ?

William Conrad testifies in substance : I am thirty years old; am mine manager of the St. Clair mine (appellant's mine).   I inspected the room that Adolph Schwalb was working in when killed, about 8:30 in the morning.   I

inspected it to comply with the law.   When I inspected it,
I had my light.   There were two others in the room when I
inspected it and they had lights.   (These two were the
deceased and his brother-in-law, Gautner.)   I held my light
in my hand and looked around.   I discovered a shell or clod.
I ordered Gautner to pull it down.   It was the duty of the
man working in that room to take care of the roof.   A man
can detect a difference between a solid roof and one that is
not solid.   It was a soft little shell of a clod when he took
it down.   I did not see a thing of this "pot" that fell.   If
it was loose, it would have sounded.   A "pot" of this kind
will not get loose three hours before it falls.   I regarded
the room as in proper shape when I left it that day.   It
was my duty as pit-boss to examine the mine, and I examined
it every day, but after the men went to work.   There would
be no difference in the sound in the rock roof and the
"clod" roof, if they were both solid.   I was inspector that
day.   I examined about 8:30; they had been at work in this
room about an hour and a half.   I examined it simply with
my light with the aid of the other two lights.   Had been
examiner for three weeks.   I returned to the room about
11:30, right after the accident.   At 8:30 I could not have
detected the looseness of that "pot" if I had sounded it.
If I could it would have fallen sooner."

This testimony of Conrad, as to what he did, is not only
not contradicted, but it is corroborated by Gautner, a wit-
ness for appellees and a brother-in-law of the deceased.

He testifies:

"The pit-boss, Wm. Conrad, came into the room about
half past eight.   He had a light in his hand and said to me
'there is a piece of clod hanging loose; pull it down before
it blows your light out for you.'   It was about the size of a
shovel.   He did nothing else.   Adolph was there when
Conrad was there.   Mr. Conrad, after he held his light
around, and walked clear up to the face, called my attention
to the fact that there was some "clod" loose.   I walked
around and could not see any more hanging.   I pulled that
down and kept on working.   I threw my pick up and didn't

hear nothing. I threw it up against the roof; it was not loose when I threw it. I walked through the middle of it, clear through to the face, and would throw my pick up every once in a while. I couldn't tell anything from the sound, because I did not understand that. I was walking around and I picked ahead of me before I walked any further. Conrad did not sound the roof but he looked over it with his light."

These are the only witnesses testifying as to the examination. The statute does not provide how or to what extent it must be made. The right of recovery in the declaration and in the statute is based upon a willful failure, "or a willful violation" of the law requiring an examination. Can it be said in view of the above testimony, that there was a "willful" failure to examine the roof of the room in question? Clearly not. The testimony of Conrad, and it is not contradicted, shows that he did examine the roof, "to comply with the law," and that in his opinion the sounding of the roof would not have disclosed the clod. Gautner examined the roof both by his light and by sounding and did not discover it.

The jury, then, was not warranted by the evidence in answering "No," to the special interrogatory : "Was the mine inspected by the pit-boss about eight o'clock the morning deceased was killed?"

In view of what we have said, and of the evidence as to the examination at half past eight, we think the following instruction given for appellees was misleading :

10. If you believe from the evidence that the defendant, by its inspector, omitted to make the examination of the mine in the morning before the miners, including the deceased, were permitted to enter the mine on the day the accident occurred by which the defendant lost his life, then, in determining whether such omission was willful on the part of the defendant, you may consider whether the defendant continuously omitted such examination for a considerable period of time, immediately before such accident, if you believe from the evidence it did so omit such exami-

nation; but you are not to understand the court as saying to you that such continuous omission would, of itself, make the omission on the day of the accident willful, but simply that you may consider that evidence .in connection with all the other evidence in the case. And the court further instructs you that you must not consider any such evidence of previous omissions as proving or tending to prove that the defendant or its examiner omitted to make such examination on the morning of the day on which the accident occurred.

In view of the evidence, this instruction gives undue importance to an omission to make an examination in the morning before the miners entered. A failure to make such an examination might have been willful, and yet if a subsequent examination was made in good faith, before the accident, and the cause of the accident was not discovered, then a willful failure to make it at an earlier hour when the cause would have been less likely to be discovered, is not a ground of recovery under the declaration.

We think, too, the following instruction asked by appellant states the law correctly and should have been given :

"The court instructs you that in this case the plaintiff must prove all the material allegations of his declaration, and this being a suit for an alleged violation of a statute, the plaintiff must prove before he can recover, first, that the defendant itself, or through its proper representative, willfully and wrongfully violated the act in question in the manner alleged in the plaintiff's declaration; second, the plaintiff must prove by the greater weight of evidence that this willful violation of this act, as alleged in the declaration (if you believe there was a violation), was the principal and substantial cause of the injury. And you are instructed that if you should believe from the evidence. that an examination of the mine was not made the day the deceased was injured before he and other employes entered said mine, but yet, if you further believe from the evidence that an examination of the mine was made by the defendant through its manager some hours before the deceased

was injured, and said mine was apparently safe from danger of falling clods, rock, etc., and that you further believe from the evidence that even though the mine had been inspected early in the morning before deceased went to work, this accident would have happened, then the court instructs you that under the evidence, the accident was not caused principally and substantially by a failure to inspect the mine as required by law.

For the reasons above stated judgment is reversed and case remanded.